### A99A1839. JORDAN v. THE STATE.
(527 SE2d 28)

PHIPPS, Judge.

Jacob Jordan was convicted by a jury of burglary, aggravated assault, and possession of a firearm during the commission of a crime. Jordan appeals, claiming that his trial counsel was ineffective in failing to object to the admission of a document that sought to influence the State's witness, Bryan Huff, to exculpate Jordan's co-defendant, Jami Scott. We find the trial court's denial of Jordan's motion for new trial on the basis of ineffective assistance of counsel was not clearly erroneous and affirm.

At trial, Huff testified that on March 14, 1997, he heard Jordan and Scott talking about robbing Huff's cousin, Henry Patterson. Jordan and Scott asked Huff if he wanted to join them, and Huff agreed, although he claimed he did so only because he was afraid they would come after him if he declined.

At approximately 9:00 p.m., Huff went to his cousin's house to warn him that he was going to be robbed. Patterson was on the telephone at the time, and Huff was not able to warn him before two men wearing ski masks pushed the door open, told Huff to get on the floor, and demanded money from Patterson. When Patterson responded that he had no money, one of the assailants hit him with a baseball bat. The other assailant shot him in the chest. Patterson told Huff to call the police, and the two assailants ran out the front door.

Patterson testified that he recognized Scott's voice and knew he was the one who hit him with the baseball bat. Huff confirmed that the voices of the assailants belonged to Jordan and Scott.

During Huff's testimony, the district attorney asked him to identify a document labeled Exhibit 10. Huff testified that the document was written by Scott and given to him by Scott's sister, who told him to rewrite it, put his name on it, have his signature notarized, and give it to Scott's lawyer. Huff did not rewrite it. Instead, he gave it to

his mother who gave it to someone "up here at the courthouse." When the district attorney attempted to tender Exhibit 10 into evidence, Scott's counsel raised a hearsay objection. The trial judge overruled the objection, and Huff was allowed to read the document to the jury. Exhibit 10 was a statement ostensibly from Huff, swearing that he knew Scott could not have been involved in the March 14, 1997 incident at Patterson's house. Huff testified the statement was not true. The statement did not mention Jordan.

At the conclusion of Huff's testimony and outside the presence of the jury, Scott's counsel moved for a mistrial. He argued that he had filed a motion for reciprocal discovery, Exhibit 10 was not produced by the district attorney, and his client was prejudiced by not having prior notice of the document. The district attorney admitted that the document had not been produced because it was in the investigator's file. After hearing testimony from the investigator, Huff, and Scott's sister, the judge denied the motion for mistrial. Jordan's counsel did not object to the admission of Exhibit 10, make any motion in response to its admission, or join the objection or motion of co-defendant's counsel.

Jordan took the stand in his own defense and testified that he came to town on March 14, 1997, to visit with family and friends. Jessica Howard, a former girlfriend, confirmed that Jordan had come to visit her that evening, but neither she nor Jordan could confirm the time he arrived or left. Jordan's sister testified that she spoke to him about 9:20 that night and that he called her from Howard's house. As Jordan was trying to leave Howard's house, he discovered that his car would not start. He caught a ride to a friend's house and spent the night there. Jordan also testified that he did not know Patterson and had never been to his house.

After his conviction, Jordan filed a motion for new trial, asserting ineffective assistance of counsel based in part on his trial counsel's failure to object to the admission of Exhibit 10. Jordan's trial counsel did not testify at the motion for new trial hearing. After the hearing, the judge denied Jordan's motion.

To establish ineffectiveness of trial counsel, Jordan must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[1] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[2] The test for reasonable attorney performance is " 'whether

---

[1] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[2] Id. at 687-689.

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[3]

We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[4] Matters such as calling a particular witness, questioning on direct and cross-examination, making trial motions, and objecting to testimony are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client.[5]

Under the circumstances, Jordan's trial counsel may have decided not to object to Exhibit 10, which made no mention of Jordan, to avoid any implication that the statement was connected with his client. Jordan's defense was that he had an alibi which placed him elsewhere at the time the crime was committed. The jury also heard testimony that Jordan and Huff had been in altercations in the past and that their families did not get along. Patterson could not identify Jordan, and Huff (the only person to identify Jordan as one of the assailants) had a possible incentive for linking Jordan to the crime. Scott, on the other hand, was identified by two people as being involved in the crime and was involved in trying to manufacture evidence. If the jury had believed Jordan's alibi defense, being tried with Scott, against whom the evidence was much stronger, could have worked to Jordan's benefit because it would allow the jury to hold someone responsible for the crime by placing all of the blame on Scott.

In this situation, we do not find that trial counsel's failure to object to Exhibit 10 was unreasonable.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED DECEMBER 7, 1999 —
RECONSIDERATION DENIED JANUARY 7, 2000.

*William J. Sussman*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[3] (Citations omitted.) *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).
[4] *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992).
[5] *Kinney v. State*, 234 Ga. App. 733, 738 (7) (c) (506 SE2d 441) (1998); *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995).